I'm Manuel Rios and I represent the petitioner Mr. Mora. This is a petition for review from the Board of Immigration Appeals. Summary affirm is that the immigration judge's decision denying Mr. Mora's asylum and withholding claims. The BIA affirmed it without an opinion from the IG. Counsel, I have a couple of questions for you. The guys who ride by on motorcycles, they say Chavez will kill you. They don't say they will kill him. And Chavez, I guess he was elected and looks like he's becoming a dictator, but it's unlikely he'd do it personally. I can't see where anything really happened to the kid in Venezuela. Well, Your Honor, that's the good news about this whole thing is that our circuit president doesn't require anything to happen. In fact, if we were to require something to happen you need a well-founded fear. And it doesn't look like you have the shifting presumption because of past persecution. People may, in the sense of a commentator, predict that things are going to get worse and worse in Venezuela before they get better. But I can't see where you've got proof in the record that right now the kid can expect persecution. I don't understand why he has a well-founded fear that's so compelling that under the Elias Zacharias standard we can overturn the IJ or should. Well, Your Honor, I respectfully would beg to differ, and I believe that that record does compel. Just say why. The reason why is because there are a lot of things. It's a cumulative analysis. And here the IJ, first of all, it can only be affirmed on the decision that he mentioned. And the only thing he mentioned is threats. Okay? We have a lot more than threats. The IJ wins unless the record compels a contrary decision. Sure, Your Honor. And what I'm saying is we've got economic persecution. There is a plethora of case law out there that says that economic – in fact, your decision in Gonzales, where the mother was determined to have suffered economic persecution by the Sandinistas, basically another communist regime, basically along the same lines. She was deprived of her ration card. And there were threats, unfulfilled threats. We don't have to wait for someone – for the threats to actually occur. The respondent – Nicaragua was a lot further down the road at the time. Excuse me? Nicaragua was a lot further down the road at the time. Well, sure. Your Honor, I understand. But the purpose of the Asylum Act is to keep people from being harmed. So the closer you get, the more likely it is to be harmed. But you can tell by the way things are going. You can tell by the country reports. The IJ certainly didn't look at any of the country reports. If we look at background country reports that are required in cases such as in Adham, Magoian, that it has to be taken into context. This Court has consistently stated that the country reports can add that objective component if you have something specific. I looked at them, but I missed where it really makes your case for you. Go ahead and give us a page number, the best stuff. Well, Your Honor, one of the beginning things is this occurred when Mr. Mora was a minor. So therefore, that the harm to his parents should naturally flow to him. But in any event, even if the Court were to reject that, we've got threats to family, physical attacks to family and friends. Contrary to the IJ's interpretation of the record, his uncle, Mr. Mora's uncle, was kidnapped. He was physically harmed. Contrary and while the uncle said he didn't think it was political, the uncle said that I believe that the record shows that he was on account from Chavez. So, I mean, political, whether or not the uncle believes it's political or not, if from Chavez, I mean, it seems to be that he's a member of this political family and he's a radio person who speaks out against Chavez, Your Honor, it can be a mixed motive as long as one of those grounds is implicated here. So, the other thing is it's all technically correct that there hasn't been an arrest yet. The record and the evidence seems to show that the father has a pending arrest that they're going to raid, that Chavez is planning to raid his property and the position here where the father is still in Venezuela, however, the father is not just living large in Venezuela doing his thing. The father's underground and he's in hiding and that there's an actual, there's a newspaper article that says that, you know, it's most likely that Chavez will arrest him. So, there, that in itself will do that. However, we have the economic persecution. We have the mom who was deprived after 23 years of service in the government of her federal benefits. And I would suggest that, and that's a substantial economic detriment on account of her political opinion. There can't be anything more clear than that, Your Honor. In addition to that, we've got some other things as far as the physical harm that we've got to other dissidents. We've got the Altamira protests. And the case law says that if you have a disfavored group, just losing the mom's economic problems, I have trouble distinguishing that from somebody who's worked for 20, 25 years in some federal, non-exempt position where it's customarily left alone. And then a new politician comes into office and they get fired. And it seems really nasty, but it's not persecution. Well, Your Honor. It happens in the U.S., not infrequently. Well, Your Honor, the firing itself, I would agree. However, we're talking about the approval of benefits. If someone has worked their whole lives for 23 years in the same position with the expectation of getting that retirement in the twilight of their career, that they're going to be denied everything that they put aside or everything that they've vested into that, I would suggest that's severe economic detriment. And I don't believe that it's simply the firing, Your Honor. What does the country report, or they call it the state report in this case, show in the U.S. that would suggest that there's any pattern or practice of discrimination? Well, Your Honor, I think that overwhelmingly they show that there is a pattern of practice. At 167, the country report states that the government intimidates political opponents and approves violence and threatening and intimidation. And they physically harm individuals from groups opposed to Chavez. It seems very clear that there were reprisals against those who publicly criticized the And that's at 175. At 116 and 117, we've got the description of the Altamira massacre, where it's public knowledge now that Chavez supporters put the gun in the hands of the shooter. We've got AR-73. Oh, no, excuse me. And that's about it as far as the AR is, as far as that, I mean, as far as something specific. But throughout the AR, it does have this whole tendency that Chavez suppresses dissonance and his opponents. Mr. Mora comes from a prominent political family. His father was a president, or excuse me, the general secretary of the AD party. He was also a senator for 25 years to the National Congress. His mom was a personal secretary of the last president before Chavez. So it would be a natural tendency to try to stifle these particular people. And to say that his position is not appreciably different from anybody else just doesn't seem to make any sense, Your Honor. With that, unless there are any more questions, I'd like to reserve the rest of my time for rebuttal. Thank you, counsel. Good afternoon, Your Honors. May it please the Court. I'm my name is Sue Harrison. I'm an assistant United States attorney with the Western District of Washington. Your Honors, with respect, substantial evidence in this record supports the agency's finding in this case. A number of the core of it is that most of the conduct of which Mr. Mora Moreno complains does not rise to the level of persecution. Harassment at school, nervousness, anxiety, not being able to run for government office or have a military career, even the loss of the mother's position in politics, none of those rise to the level of persecution. There must be more than that, something more. Did the mother lose retirement benefits that were vested? Or were they not vested? I don't know, Your Honor. I don't think the record is clear on that. What she said was that after, I believe, it's 23 years working for the government or the legislature, Chavez closed down the entire legislature, and so as a result, she lost it. Clearly, it was not directed at her individually, a number of people, as a result of this change of parties. I mean, it was — it's a huge political and economic revolutionary change. And certain people like the Mora Morenos who enjoyed a great deal of status, politically, in terms of wealth and so on, the earth is turning and changing beneath their feet. But that doesn't rise to the level of persecution. There are some very specific incidents that counsel just referred to that are in the brief, for example, the Altamira shooter. In the documents that Mr. Mora Reno presented, it states that that shooter was identified. He was not only arrested, but he was convicted and sentenced by the Chavez government or under the aegis of the Chavez government. Well, did the Chavez government, though, or someone on behalf of Chavez give the shooter munitions before it happened? Your Honor, there's nothing in the record they talk about this person was a drifter that was shot into the crowd. Whether there were individuals who may have, you know, may have been pro-Chavez because it was an anti-Chavez rally really doesn't — that — first of all, how that relates to Mr. Moreno, which is the real question, he happened to be present at the rally. But the fact is that shooter was convicted and sentenced. Another issue is with respect to the uncle. There are really four members of this family, if you count Mora Reno. If you don't, three members of this family who are pro-Chavez. Both the mother and Mr. Mora Reno said the vast majority of the family is pro-Chavez. They're the only anti-Chavez family members. And that's the mother and father who haven't lived together. His immediate family, his mother and father, clearly identified as pro-Chavez, right? Yes, Your Honor. Why in the real world of Venezuela, why doesn't he have an objective fear of being returned there? Well, first of all, and I do want to point out, I don't think it's critical, but it's important to note that the mother and father haven't lived together since Mora Moreno was 12 years old. It's not a nuclear family. And second of all, they simply are among the many, many politicians and upper or upper middle class individuals who have lost both some of their wealth and some of their power and status as a result of Chavez's coming to power. That doesn't rise to the level of persecution, Your Honor. Okay, here's what's bothering me. As I understand it, he says, and the IJ said he was family, which whatever else that means, you would think it would mean his immediate family, whether they're split up or not, that it would mean he has the son of his father, who's a Chavez opponent. So if he's told there are death threats against him, and given the reality of the I think the IJ said he had a genuine subjective fear. But he failed. The question is whether he meets the objective test. So I would appreciate it if you would address that. Yes, Your Honor, and that's what really, because when it comes down to it, and my brief addresses that as well, that really taking away all of the other, the threats are something to analyze and look at. And in this circuit, there have been a number of threat cases. And if you look at them, notwithstanding the fact that this circuit has said that threats standing alone can amount to persecution, if you look at the facts of each case, there are other factors that make the threats something more than just simply threats. And in this case, these threats went on for four years. And I point out that the mother left Venezuela and returned three different times during that whole period when the threats were being made. And those other factors are the source of the threats. For example, in our case after case, if the Shining Path in Peru made a threat to an individual, this circuit rightfully said, those people are as good as their word. If they make the threat, then the target is dead. And because there was the sufficient evidence to support that. Another factor is the threats are accompanied by harm and violence. And there are a number of threat cases in this circuit, and I address them individually in my brief, Your Honor, where what it really isn't just a threat case, where the individual was beaten, where the individual's parents were beaten. In this case, not a single person has suffered any violence, has not been arrested. There's been no direct confrontations. These are telephone threats. They also look at the duration and frequency and the directness of the threats. I think you've got a pretty reasonable analysis of the threat cases, except for the fact that we have dealt differently with death threats. And maybe there has to be a threat plus in other cases. But in a lot of contexts, I think we've said, if there was a death threat, that would be enough. Now, here, the death threats are somewhat indirect, threat to the family, the guys riding by on motorcycles. But is it correct that his life was threatened? Well, Your Honor, I disagree. I think there have been cases where most of the threat cases do involve, you're going to die, we're going to kill you. But the Court also looks at, well, you know, how seriously should we take these threats? Particularly, if you look at this case, these threats went on for four years, and there was not a single incident where they even cited having been followed. And the threats by the motorcycle, Your Honor, that's a single incident when Mr. Moreno was acting as a community night guard on the roof at night. Nobody could identify him. They didn't know who he was. He didn't know who they were. So that can't really you can't connect that to the threats the parents received, I don't think, under the facts of this case. How about the threats the parents got, though? Threats the parents got, threats your kids will be raped or murdered or something. Yes. And I agree, Your Honor. Those threats, the I.J. found that those threats were made and then looked at them in the context of how seriously must we make those take those threats. Again, over this period of time, with nothing more than receiving those telephone threats, Mr. Moreno himself, the Petitioner, attended a number of rallies. He signed petitions against Hugo Chavez. The mother did as well. The mother even presented a petition to Hugo Chavez's wife in person. And yet nothing more than telephone threats. And I think there's a point where you were It's I don't mean to understate. I would not like to receive death threats. Nobody would like to receive death threats. But there's a point at which we have to look at whether those threats alone in the context of this case and on these facts amounted to persecution. Counsel, what is there in the record about the current circumstances of the father? Is he in hiding? Your Honor, the most recent circumstances are the 2004 record, where it states that the record states that the father is in hiding. He is the son testified at the evidentiary hearing that the father is in a secure place with lots of ammunition, weapons, and security system and security guards. But again, the only reference to his being arrested was simply one item in the record by a newspaper, a local newspaper where the father lived, that said it's rumored that he will be arrested. And his property is expected to be raided, and they will persecute him. And it's about rumors. The uncle himself, who these were also he received death threats. When asked about those death threats, specifically asked did these come from the invaders or the invaders, he said, I'll repeat myself, I don't know where they came from. When asked if any politician is promoting these invasions, and remember, it has to be the government has to have some involvement, either the government or forces that they cannot or will not control, he said, no, I wouldn't believe so that any politician was promoting these. I believe most of these invaders are dishonest people and a bunch of criminals that have taken this as an opportunity to make a quick profit. And that is just a great deal of civic, civil unrest in a country, understandably with Chavez in who has taken control. And so it's not trying to understate the unfortunate circumstances this family has undergone. Nevertheless, Your Honors, under the law, this does not rise to the level of persecution. Roberts. Thank you, counsel. I have one final question. It may be a technically legal question, but if it's a close case on the law, you know, if it's a coin flip, given our country's relationships with Venezuela right now, and with the Chavez regime, you know, why, why should we take a strict view of the elements of the law for a son of a Chavez opponent? You know, if it's close on asylum, shouldn't we give this person the benefit of the doubt if it's a close one? Then, of course, the Attorney General has discretion whether to give asylum or not, right? Yes, Your Honor. You say the elements are satisfied. Yes, Your Honor. That's what's bothering me about this case. Your Honor, that's a difficult question. I would hate to see the immigration law being driven by political opinions or who's President or who's the Attorney General at any given time. And I think it's – I personally, I would not like to take that into consideration. There's always a possibility of drawing two inconsistent conclusions, but that does not negate the substantial evidence standard in this case, and I suggest that substantial evidence supports the IJ's and the BIA's findings. I think something that makes us uncomfortable in this type of case is that time has passed, and I'd really like to know what would happen to this fellow when he goes back today, and there's nothing in the record that really helps us with that, is there? No, there isn't, Your Honor. That's always the case. This is a relatively recent case compared to some of them, but that's always the case. Thank you, Your Honor. Thank you, counsel. Your Honors, I would like to actually make a little correction. As the opposing counsel has stated, that as far as the father is concerned, it was simply a rumor and speculation that he will be raided or will be arrested. However, the actual administrative record shows differently. At 263 is the Spanish version. At 263 is the English version. It actually says, based on rumor and filed charges. So, and filed charges seems to mean that, to me, that it would be some kind of a court document, filed charges. So, I mean, we do have some kind of substantiation in the record as far as the father has some kind of pending sedition charges against him on account of his opposition to the Chavez regime. In addition, as far as, you know, what other kinds of attacks, the I.J. is incorrect as far as his mom goes in the physical attacks as well. At 245 in the administrative record, in the mom's personal statement, she states that she was her neighbor had assaulted her by trying to drive her car into her. These are not, as counsel has suggested, phone calls. These are personal threats. At 245, it states that, you know, her neighbor would continually, the petitioner's mom's neighbor would continually harass and abuse her and go to her and talk to her and, in fact, try to drive her car into Ms. Moore. So there is something more. So we have something that's threats plus. We have threats plus some attacks. We have threats plus physical, excuse me, psychological harm. We have threats plus economic deprivation. This is not, as the I.J. characterized it, simply a threats case. And, in fact, that's a fatal flaw. And in addition, the I.J. didn't go the next step. He did say, you know, threats aren't enough. Well, the proper inquiry is not whether or not the threats are enough. The proper inquiry is do the people who are making the threats have the ability and the will to carry it out. And the background evidence in this case definitively answers that in the affirmative. Thank you. Thank you, counsel. More break? Either now or after the next one. Good time, Timmy. Either way, how much time do we have? We'll take a 10 minute recess now. Maura Moreno versus Gonzales is submitted.
judges: B. Fletcher, Kleinfeld, Gould